UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOX ACQUISITIONS, LLC, d/b/a BOX PARTNERS, LLC and BOX PACKAGING, LLC an Illinois Limited Liability Company, )))) | |
| Plaintiff, )) | |
| v. ) | 12 C 4021 |
| ) | |
| BOX PACKAGINIG PRODUCTS, LLC, an Indiana Limited Liability Corporation; JAMIL PACKAGING CORPORATION, an Indiana Corporation; and DAVID M. DIROLL, an individual, )))))) | |
| Defendants. ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion for summary judgment of Defendants Box Packaging Products, LLC ("Box Packaging Products"), Jamil Packaging Corporation ("Jamil Packaging"), and David M. Diroll ("Diroll") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the following reasons, the Court grants summary judgment in its entirety.

## BACKGROUND

### I. Facts

The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court

reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record. The parties do not dispute the facts below unless otherwise noted.

Plaintiff BOX Acquisitions, LLC, d/b/a BOX Partners, LLC ("BOX Partners") and BOX Packaging, LLC ("BOX Packaging") (collectively "Plaintiff") is a distributor and a wholesaler of shipping and industrial products in Illinois. Jamil, an Indiana corporation, became a customer of Plaintiff in June 1998 and a vendor in 2008 up until May of 2012. Jamil designs and manufactures corrugated boxes and packaging, and markets products for other companies. Plaintiff currently uses both names, BOX Packaging and BOX Partners, interchangeably, in advertising, sales, and marketing materials. Plaintiff never formally announced the adoption of BOX Partners when it began using it in 2004. "Boxpartners.com" was registered as a domain name in 2004.

Plaintiff does not have a federal trademark registration for either "Box Packaging" or "boxpackaging.com", but does for BOX Partners and "boxpartners.com". Plaintiff also registered "www.boxpkg.com" in 1996 as a domain name and started using it around 2001. Allied Packaging ("Allied"), a third-party company, owned the "boxpackaging.com" domain from 1999 until 2009. Plaintiff was aware that Allied obtained "boxpackaging.com" in the early 2000s; however, it did not take action against Allied because Allied was not actively using the domain. The parties dispute whether Allied used "boxpackaging.com" in 2008 and 2009.

Around December 15, 2010, Diroll, General Manager at Jamil, purchased the "boxpackaging.com" domain through the Go Daddy service for $5,675.00. Diroll also registered "boxpackaging.biz", "boxpackaging.com", and "boxpackaging.info" (collectively with "boxpackaging.com" the "Domains"). A company called Sunrise Packaging, Inc. ("Sunrise") currently owns "boxpackaging.net". Diroll purchased and registered the Domains in part to serve as a lead generator to the jamilpackaging.com domain. Once Defendants obtained the Domains, Diroll started Box Packaging Products LLC and invested in advertising that mentioned the "boxpackaging.com" domain and used the phrase "Box Packaging".

A sign outside of Plaintiff's office building previously said BOX Packaging, but now says BOX Partners. Employees of Plaintiff currently use "boxpartners.com" email addresses and multiple exhibits including invoices, paperwork, correspondence, and advertisements. Employees issue bills of lading which identify Plaintiff only as BOX Partners. However, price quotations, invoices, shipper documents and checks from Defendants to Plaintiff from 2009 to 2012 refer to Plaintiff as BOX Packaging. Some companies and entities that operate in the packaging industry also use the words "box" and "packaging". For example, the UPS Store uses "box-packaging" in its domain name, as does A&R Box and Packaging, which also refers to the phrase "Box Packaging" on its website.

Plaintiff has not conducted any consumer surveys, studies, or market research related to the phrase "Box Packaging". Plaintiff's employees claim that they have

received complaints from suppliers and customers expressing confusion regarding why "boxpackaging.com" directed those to Defendants' website. However, these employees cannot recall any names of any of these individuals. The parties met on April 1, 2011 to discuss Defendants' use of "boxpackaging.com". After this meeting, the parties corresponded through early May 2011, with Plaintiff offering to purchase "boxpackaging.com" for $500.00, which Defendants rejected.

On October 18, 2011, Defendants filed an application to trademark "boxpackaging.com" in hopes of using it in connection with the packaging industry. The trademark application contained the following representation: "[a]dvertising, marketing, and promotional services in the field of packaging, shipping, corrugated boxes, and industrial products by providing an on-line website and advertising and marketing materials". Defendants listed on their application that the first use of the trademark and the first use of the trademark in commerce were December 10, 2010. On April 3, 2012, the "boxpackaging.com" mark was registered on the supplemental register and given the number 4,123,303.

Around the time Plaintiff filed the instant lawsuit in May 2012, Plaintiff took down Defendants' jamilpackaging.com website, which it had been hosting on Defendants' behalf. The parties also ceased most of their business together around this time.

## II. Procedural History

On November 5, 2013, Plaintiff filed its amended complaint with this Court against Defendants alleging: (i) a Lanham Act claim for false or fraudulent registration under 15 U.S.C. § 1120; (ii) a Lanham Act claim to cancel Defendants' registration of "boxpackaging.com"; (iii) a Lanham Act direct infringement claim of BOX Partners under 15 U.S.C. § 1114; (iv) a Lanham Act unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a); (v) a Lanham Act cybersquatting claim under 15 U.S.C. § 1125(d); (vi) a violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 Ill. Comp. Stat. Ann. 510/1 *et seq.*; (vii) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*; (viii) trademark infringement under Illinois common law; and (ix) unfair competition under Illinois common law.  On January 31, 2014, Defendants moved for summary judgment pursuant to Rule 56 on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on

issues on which the movant bears the burden of proof at trial. *Id.* at 325. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-movant. *Id.* at 255. "[A] motion for summary judgment in trademark infringement cases must be approached with great caution." *AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 616 (7th Cir. 1993).

## DISCUSSION

### I. Trademark Infringement and Unfair Competition Claims

"Congress passed the Lanham Act in 1946 to 'federalize' existing common law protection of trademarks used in interstate commerce." *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 672 (7th Cir. 2001). "The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 198 (1985). To prove a federal trademark infringement violation, Plaintiff must establish: (i) a protectable mark in "Box Packaging" before Defendants began using the allegedly infringing mark; and (ii) that the use of "Box Packaging" is likely to cause confusion

among consumers. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001). Plaintiff, as the claimant, bears the burden of establishing that its mark is entitled to protection or at the very least, that there exists a genuine issue of material fact as to this issue. *Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). Both of Plaintiff's federal trademark infringement and unfair competition claims involve the same elements and proof. *See Spex, Inc. v. The Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994).

The heart of this trademark infringement case is not difficult to ascertain. Approaching summary judgment with great caution, this Court finds the core issue as being whether "Box Packaging" is a protectable trademark or whether it lacks protection because it is a descriptive phrase with no acquired secondary meaning.

**A. Mark Classification**

Courts classify marks into five categories of increasing distinctiveness: (i) generic; (ii) descriptive; (iii) suggestive; (iv) arbitrary; and (v) fanciful. *Platinum Home Mortg. Corp.*, 149 F.3d at 727 (citing *Two Pesos, Inc. v. Taco Cabana Inc.*, 505 U.S. 763, 767-68 (1992)). The level of protection to which a mark is entitled depends on where it falls on the spectrum of distinctiveness, the least distinctive being the "generic" mark to the most distinctive being the "fanciful" mark. *Two Pesos, Inc.*, 505 U.S. at 768. At issue is whether "Box Packaging" should be considered a "descriptive" or "suggestive" mark. This distinction is important because a suggestive mark has full trademark protection, whereas a descriptive mark is not protected unless

it becomes distinctive, or put another way, "acquires secondary meaning" 'in the collective consciousness of the relevant community.'" *See Platinum Home Mortg. Corp.*, 149 F.3d at 727 (quoting *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996)).

A descriptive mark "describes the ingredients, qualities, or characteristics of an article of trade or a service." *Platinum Home Mortg. Corp.*, 149 F.3d at 727 (quoting *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986)). A suggestive mark only indirectly suggests a product's qualities. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952-53 (7th Cir. 1992). To determine if a mark is descriptive or suggestive, the court uses the "degree of imagination test." "[I]f the mark imparts information directly, it is descriptive, however if the mark stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Id*. at 952 (identifying "Thirst Aid" as descriptive when used for a drink that quenches thirst and "Roach Motel" as suggestive when used for an insect trap).

Defendants argue that they are entitled to summary judgment because "Box Packaging" is a descriptive phrase with no secondary meaning that would entitle it to trademark protection. Plaintiff disagrees, stating that although it does not hold a registered trademark with the United States Patent and Trademark Office ("PTO") for the phrase "Box Packaging," that whether "Box Packaging" is descriptive or suggestive is not suitable for summary judgment because the categories are

ambiguous and present issues of material fact. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 502 (7th Cir. 1992) ("Through § 43(a) of the Lanham Act . . .a provision addressed to deceit, it also indirectly allows the enforcement of unregistered marks."). However, Plaintiff argues that irrespective of the questions of fact, the evidence shows that "Box Packaging" is protected as an inherently distinctive "suggestive" mark. Alternatively, if this Court considers the mark as descriptive, Plaintiff asserts that it has satisfied the minimum threshold to establish that the phrase has acquired distinctiveness, also known as secondary meaning.

More specifically, Defendants aver that "Box Packaging" is a plain description of what Plaintiff sells, boxes and packaging, and that no reasonable jury could find otherwise. They cite to the use of "Box Packaging" by other companies in the industry as evidence of the descriptive nature of the phrase. Defendants further use written discovery as support: Plaintiff states in an answer to an interrogatory that "100% of Plaintiff's annual revenue is related to the sale of boxes and packaging products and services" (while still asserting its general objections to the interrogatories).

To rebut Defendants' "descriptive" arguments, Plaintiff contends that "Box Packaging", as a whole, does not immediately convey or describe the breadth of the services it provides since it does not only sell boxes and packages. Plaintiff lists the other industrial products it sells in addition to boxes and packaging, including adhesives, tape, cable ties, fasteners, bubble foam, filling, carts, safety products, as

well as services like advertising, marketing, and promotion of other companies in the same industry. It also offers that "Box Packaging" is not a commonly defined phrase found in a standard dictionary.

The burden is on Defendants to provide enough evidence to create no doubt that "Box Packaging" should be classified as descriptive and no genuine dispute of fact exists otherwise. *See Timelines, Inc. v. Facebook, Inc.*, 938 F. Supp. 2d 781, 793 (N.D. Ill. 2013) (". . . the classification of Plaintiff's marks is a question of fact. . . unless Defendant can demonstrate that the evidence as to Plaintiff's marks is so obvious that there is no doubt as to how the question of classification of the mark should be answered."). Understanding that categorizing "Box Packaging" as descriptive or suggestive can be a question of fact, this Court finds that as a matter of law, "Box Packaging" is a descriptive mark. No operation of the imagination is necessary for this Court to connect "Box Packaging" with the fundamental operations of the company. *See Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 444 (7th Cir. 1990) (It is not required "that a descriptive term depict the [product] itself, but only that the term refer to a characteristic of the [product]."). Although Plaintiff does not limit itself to only distributing boxes and packaging, a majority, if not all of its products and services it lists for the Court, encompass boxes and packaging in some fashion. Additionally, the use of "Box Packaging" at other companies in the industry also convinces the Court that the phrase is descriptive because it is widely acknowledged in the packaging service industry. Finally, the fact that "Box

Packaging" is not found in the dictionary is inadequate to show an issue of material fact.

## B. Secondary Meaning

Because this Court has found "Box Packaging" descriptive, and not suggestive, the phrase is not protected unless Plaintiff can establish that "Box Packaging" has a secondary meaning in the mind of the public. "A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the word, term, name, symbol, or device has come to mean that those products or services are the company's trademark." *Platinum Home Mortg. Corp.*, 149 F.3d at 728. A plaintiff "must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). Descriptiveness and lack of secondary meaning can be decided in favor of a defendant on summary judgment. *Custom Vehicles Inc. v. Forest River, Inc.*, 476 F.3d 481, 486 (7th Cir. 2007). A plaintiff may face a heightened burden because "the more descriptive the term, the greater the evidentiary burden to establish secondary meaning." *Spex, Inc.*, 847 F. Supp. at 576.

Courts consider both "direct evidence" factors and "circumstantial evidence" factors in deciding secondary meaning. *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989). There are two direct evidence factors: (i) direct

consumer testimony; and (ii) consumer surveys. *Id*. These factors constitute "the chief inquiry with respect to secondary meaning." *Spex Inc.*, 847 F. Supp. at 577. Circumstantial factors include: (i) exclusivity, length and manner of use; (ii) amount and manner of advertising; (iii) amount of sales and number of customers; (iv) established place in the market; and (v) proof of intentional copying. *Id*.

The burden is on Plaintiff to show that "Box Packaging" has a secondary meaning attached to it, or at the least demonstrate that a genuine issue of material fact exists as to the secondary meaning of the phrase. As to the direct evidence factors, Plaintiff does not present any direct consumer testimony or consumer surveys, but asserts that it is not required to prove every single factor and that the record raises material issues of fact on the question of secondary meaning. Instead, Plaintiff states that it submitted sufficient evidence on three of the circumstantial factors to convince this Court that at the very least, a material issue of fact exists.

### 1. Exclusivity, Length and Manner of Use

Plaintiff argues that it has exclusively used the phrase "Box Packaging" since 1989 in connection with both its goods and services and that this use has created a secondary meaning in the phrase and consequently, a protectable right. Defendants rebut this argument with examples of other companies that have used "Box Packaging" in some manner. (Sunrise's current ownership and use of a similar domain, "boxpackaging.net", and the use of the phrase "box-packaging" in the UPS Store's domain website and by A&R Box and Packaging).

For instance, Defendants maintain that Plaintiff did not exclusively use "Box Packaging" for the years it claims because Allied owned "boxpackaging.com" from 1999 until 2009. Plaintiff claims that even though it did not possess that specific domain, it used the phrase "Box Packaging" and went by BOX Packaging since 1989. The parties dispute whether Allied actually used "boxpackaging.com" in 2008 and 2009. Plaintiff claims that Allied "merely maintained a registration of the domain name" and "did not actually use the domain name through at least 2006", therefore continuing Plaintiff's exclusive use of "Box Packaging". Nonetheless, the materiality of this fact is not as obvious to this Court as it is to Plaintiff. What this Court finds more unfavorable to Plaintiff's position is its use of BOX Partners.

Beginning in 2004, Plaintiff started to refer to itself as BOX Partners interchangeably with BOX Packaging. The use of BOX Partners was not as incidental as Plaintiff claims—the record reflects Plaintiff used BOX Partners instead of BOX Packaging. Multiple exhibits, including countless invoices, paperwork, correspondence, and advertisements, refer only to BOX Partners, and not BOX Packaging. While many of these invoices are from more recent years, the record reveals that Plaintiff started to use BOX Partners more frequently over referring to itself as Box Packaging. Plaintiff also changed the sign outside its office from BOX Packaging to BOX Partners and employees use "boxpartners.com" email addresses.

Irrespective of when all of these changes occurred, Plaintiff's inconsistent use of BOX Packaging contradicts its attempts to establish a secondary meaning through

exclusivity, length and manner of use.  *See Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 907 (7th Cir. 1983) (holding that inconsistent advertising of an alleged protected trademark for five years did not establish secondary meaning).  Indeed, Plaintiff is correct that a product or organization may be designated by more than one protectable mark.  *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 435 (7th Cir. 1999).  However, this Court finds that the frequent use of BOX Partners has broken the chain of continuity necessary for "Box Packaging" to acquire a secondary meaning based on this factor.  This also rebuts any argument by Plaintiff that it had an established place in the marketplace because of the length and manner of its use of the "Box Packaging" mark.  *See Edsal Mfg. Co., Inc. v. Vault Brands, Inc.*, No. 11 C 9287, 2012 WL 5558849 (N.D. Ill. Nov. 15, 2012) (citing *MicroStrategy Inc. v. Motorola*, 245 F.3d 335, 342 (4th Cir. 2001), which held that trademark usage must be "readily apparent and recognizable without extended analysis or research and certainly without legal opinion").

The same is true with respect to the fact that Plaintiff also fails to provide enough evidence for this Court to conclude that even before it began using BOX Partners (from approximately 1989 to 2004) that the public associated "Box Packaging" with Plaintiff enough to acquire a secondary meaning.  *See Edsal Mfg. Co., Inc.*, 2012 WL 5558849 ("Although use in commerce is essential for trademark rights, use of a merely descriptive or generic term will not on its own create trademark

rights."). The circumstantial factors of exclusivity, length, and manner of use are, therefore, unsupportive as to the existence of a secondary meaning.

## 2. Advertising and Proof of Intentional Copying

As to the amount and manner of advertising, Plaintiff admits that it did not produce specific advertising and sales figures during discovery for the Court to consider, but that it has produced and spent "substantial sums" on "hundreds of pages" of Plaintiff's advertisements with "Box Packaging" on them. Defendants refute this by claiming that only a dozen of those advertisements even mention "Box Packaging" and almost all advertise BOX Partners. Additionally, Defendants argue that Plaintiff should be precluded from offering evidence to prove this circumstantial factor because Plaintiff "stonewalled" written discovery by asserting "unfounded objections" to Defendants' requests for information on Plaintiff's advertising.

After review of the record, this Court agrees that Plaintiff fails to meet its evidentiary burden of establishing that its amount and manner of advertising create a secondary meaning. There is little evidence that these advertisements had a significant effect—the record is devoid of details on when and for how long these advertisements were broadcasted, who may have seen these advertisements, and whether they reached consumers. Additionally, nothing indicates that actual customers of Plaintiff were even exposed to these advertisements. *See Echo Travel, Inc.*, 870 F.2d at 1270 (where 25,000 posters and advertisements in student newspapers were not sufficient enough to raise a genuine issue of material fact as to

the existence of secondary meaning).  Therefore, the bald assertion that these "hundreds of pages" of advertisements reached consumers during the decades Plaintiff exclusively used "Box Packaging" does not establish an issue of material fact as to this circumstantial factor.

Regarding the issue of proof of intentional copying, Plaintiff claims that after ten years of conducting business with Defendants as BOX Packaging, Defendants intentionally copied after they purchased the Domains and started the Box Packaging Products company in 2010.  Plaintiff uses Diroll's deposition testimony where he stated that he registered and purchased the Domains to act as a "lead generator" as evidence of intentional copying because once the Domains were purchased, Plaintiff became a direct competitor.

"When a business's strategy includes using a competitor's name in order to divert or confuse potential customers, infringement or dilution or other unfair trade practices may be occurring.  Where a competitor's strategy is to use generic and descriptive terms to market its products, wrongdoing is less likely."  *Best Vacuum, Inc. v. Ian Design, Inc.*, 04 C 2249, 2005 WL 1185817 (N.D. Ill. Jan. 18, 2005). Because this Court has found "Box Packaging" to be a descriptive phrase, improper use of it by Defendants is not as likely.  While it is true that Plaintiff used the company name of BOX Packaging for many years, the record reflects that it started to phase that name out in 2004 when it started using BOX Partners.  Also, as Defendants

point out, other companies use "Box Packaging" to promote their products on the internet.

This Court finds that the choice Plaintiff took when it used a common descriptive phrase for its original company name, and its subsequent decision to refer to itself as BOX Partners collectively weaken its argument of intentional copying. The years that the parties engaged in business together and Diroll's deposition testimony do not salvage Plaintiff's lack of evidence showing that Defendants intentionally copied the name and mark or acted in bad faith. Consequently, in addition to supplying no direct evidence, Plaintiff has failed to provide any significant circumstantial evidence that the public associated a secondary meaning with BOX Packaging.

### C. Likelihood of Confusion

Defendants contend that they are entitled to summary judgment because Plaintiff does not meet its burden of providing evidence to show that Defendants' use of "Box Packaging" is likely to confuse. Plaintiff disputes this, asserting that there were instances of actual confusion and that Defendants' use of "boxpackaging.com" infringes on its federally registered trademark "BOX Partners".

In the Seventh Circuit, seven factors are used to evaluate whether a likelihood of confusion exists: (i) the similarity between the marks in appearance and suggestion; (ii) the similarity of the products or services; (iii) the area and manner of concurrent use; (iv) the degree of care likely to be exercised by consumers; (v) the strength of the

plaintiff's mark; (vi) whether any actual confusion exists; and (vii) whether the defendant intends to palm off its products as those of the plaintiff. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897-98 (7th Cir. 2001). As a factual issue, likelihood of confusion can be decided in the summary judgment stage "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996). Every factor need not be proven, instead the "weight and totality of the most important factors in each case will ultimately be determinative of the likelihood of confusion, not whether the majority of the factors tilt the scale in favor of one side or the other." *AHP Subsidiary Holding Co.*, 1 F.3d at 616. In some cases, lack of evidence of actual confusion may be conclusive to a finding of no likelihood of confusion. *Nike, Inc. v. Just Did It Enters.*, 6 F.3d 1125, 1231 (7th Cir. 1993).

Plaintiff claims that it has provided evidence of actual confusion because several customers expressed confusion. However, no information is known about these customers because Plaintiff's employees claim they cannot remember any specific names. Stating the existence of actual confusion is not the same as proving that an issue of material fact exists as to it. The Court now turns to the likelihood of confusion since evidence of actual confusion is not required to prove that a likelihood of confusion exists.

It is not necessary for this Court to do a full analysis of all seven factors that establish likelihood of confusion. Indeed, boxpackaging.com and boxpartners.com

(BOX Partners) share the word "box" and provide very similar services, but confusion is less likely to occur with sophisticated business customers that typically purchase Plaintiff's products and services. *See Humanly Possible, Inc. v. Manpower, Inc.*, No. 11 C 4977, 2013 WL 633332 (N.D. Ill. Feb. 19, 2013). As to the strength of Plaintiff's mark, this Court has already determined that "Box Packaging" is a common descriptive phrase. Plaintiff's federal registration of BOX Partners is not a particularly strong mark either. Finally, in the intentional copying analysis contained in Subsection B2 *supra*, the Court has concluded that the evidence does not support that Defendants have attempted to palm off their services as those of Plaintiff. Thus, the factors weigh in favor of Defendants, and no material issue of fact exists as to a likelihood of confusion in the sense that consumers were confusing "boxpackaging.com" with BOX Partners.

Because this Court has found that Plaintiff falls short of establishing that it has a protectable right to the phrase "Box Packaging", Defendants' laches and acquiescence by estoppel defenses need not be addressed. Defendants are therefore entitled to summary judgment as to Counts III and IV.

## II. Remaining Federal Claims

### A. Fraudulent Registration and Cybersquatting Claims

To establish that Defendants engaged in fraud in procuring the registration of "Box Packaging", Plaintiff must establish by clear and convincing evidence that Defendants deliberately attempted to mislead the PTO by presenting materially false

and misleading information when Defendants applied for their trademark registration. *See Money Store v. Harriscorp Fin., Inc.,* 689 F.2d 666, 670 (7th Cir. 1982); *see also In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009) ("a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO."). Compared to a claim for fraudulent registration, a cybersquatting claim involves a similar showing of bad faith. To establish its cybersquatting claim, Plaintiff must show that: (i) it had a distinctive or famous mark at the time Defendants registered the domain name; (ii) Defendants registered, trafficked in, or used a domain name that is identical or confusingly similar to Plaintiffs' mark; and (iii) Defendants acted with bad faith to profit from that mark. *MasterCard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824, 830 (N.D. Ill. 2009).

As to these remaining federal claims, it is undisputed that Defendants were aware of Plaintiff's use of "Box Packaging" in the years prior, particularly because the parties engaged in business relations. Still, advance knowledge of a mark's use by itself does not establish triumphant claims involving bad faith. *See Packman*, 267 F.3d at 644-45. In fact, the evidence clearly cites to other companies in the same industry that actively use the phrase "Box Packaging" or variations of it, predominantly on their websites or in their choice of domains. This refutes any argument from Plaintiff that it had a distinctive or famous mark at the time

Defendants registered the domain name, in addition to the fact that this Court has found that "Box Packaging" was not a protectable mark.

Also, at some point, Allied relinquished ownership of the "boxpackaging.com" domain because Defendants purchased it through the Go Daddy service for $5,675.00. This indicates that Box Acquisitions had the opportunity to purchase the "boxpackaging.com" domain. Plaintiff's conclusory accusations that Defendants fraudulently registered "boxpackaging.com" and engaged in cybersquatting because Defendants knew Plaintiff used "Box Packaging" does not create a genuine issue of material fact or rise to the level of clear and convincing evidence to support these claims. When all is said and done, Plaintiff could have registered "Box Packaging" with the PTO for the years it claims exclusive use of the phrase and the results of this lawsuit could have been vastly different. However, it failed to do so. For these reasons, the Court grants Defendants' summary judgment motion as to Counts I and V.

### B. Cancellation of Trademark Registration Claim

Plaintiff asks for this Court to cancel the trademark registration of "boxpackaging.com" Defendants currently have with the PTO office. While federal courts possess the power to cancel registration of a trademark when appropriate, it is to be done when "a registrant's asserted rights to a mark are shown to be invalid, cancellation is not merely appropriate, it is the best course." *Central Mfg., Inc. v. Brett,* 492 F.3d 876, 883 (7th Cir. 2007). This power only arises if the trademark is

contestable and "[o]nce a mark has been used for five years following registration, it becomes 'incontestable'". *Eco Mfg. LLC v. Honeywell Int'l, Inc.,* 357 F.3d 649, 651 (7th Cir. 2003). Despite the fact that the "boxpackaging.com" mark is still contestable because it was registered fewer than five years ago, this Court finds no reason why it should cancel Defendants' trademark registration of "Box Packaging". Accordingly, summary judgment is granted as to Count II.

## IV. Remaining State Law Claims

Defendants have met their burden of establishing that no rational trier of fact could find that the phrase "Box Packaging" warrants trademark protection as either a suggestive mark, or alternatively, as a descriptive mark that acquired a secondary meaning. Defendants also establish that no genuine issue of material facts exist as to the other federal claims brought under the Lanham Act. Plaintiff fails to meet its burden of showing through specific evidence that a triable issues of fact remain. As such, this Court grants summary judgment as to Plaintiff's common law and statutory claims because all are resolved under the same analysis as the federal claims. (Counts VI through IX). *See Spex, Inc.*, 847 F. Supp. at 579 (holding that "[c]laims for unfair competition and deceptive business practices [involving trade names] brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act" and noting that "Illinois courts look to federal case law and apply the same analysis to state infringement claims").

**CONCLUSION**

For the foregoing reasons, this Court grants Defendants' motion for summary judgment in its entirety.

_____
Charles P. Kocoras
United States District Judge

March 26, 2014
Dated: _____